UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM G. WILSON, JR.,

        Plaintiff,

v.                                                Case No. 8:10-cv-1885-T-17MAP

FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES, DIVISION OF DRIVER
LICENSES, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Acting *pro se*, the Plaintiff has sued the Florida Department of Highway Safety and Motor Vehicles' Division of Driver Licenses (the "Department") and its director, Sandra C. Lambert ("Lambert"), for alleged violations of his Fifth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (doc. 1).[1]  In summary, the Plaintiff contends the Department denied him procedural due process when it revoked his commercial driver's license for prior convictions for driving under the influence.  Currently before the Court is the Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915 (doc. 2).  Because I find the action frivolous, I recommend the district judge deny his application and dismiss the complaint.

_____

[1]  This is Plaintiff's second attempt in this district to obtain damages against the Florida Division of Driver Licenses for alleged violations of his due process rights regarding the revocation of his license for prior driving under the influence convictions.  *See William G. Wilson v. Florida Division of Driver Licenses*, Case No. 8:08-cv-786-T-17MSS.  Plaintiff's previous complaint was dismissed after Plaintiff failed to correct deficiencies noted by the Court despite two opportunities to do so.  *See id.*, doc. 7.

A.  *Standards*

1.  *in forma pauperis applications*

Under 28 U.S.C. 1915(a)(1), the court may authorize the filing of a civil lawsuit without prepayment of fees if the affiant submits an affidavit that includes a statement of all assets showing an inability to pay the filing fee and a statement of the nature of the action which shows that he is entitled to redress.  Even if the affiant proves indigency, the case shall be dismissed if the court determines the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see* M.D. Fla. R. 4.07 ("The Court may dismiss the case if satisfied that the action is frivolous or malicious, as provided by 28 U.S.C. § 1915(e); or may enter such other orders as shall seem appropriate to the pendency of the cause ....").  Although the court will hold *pro se* pleadings to a less stringent standard and construe the complaint more liberally, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

The Eleventh Circuit has suggested that a case is frivolous at any point in the proceedings when it appears the plaintiff has little or no chance of success.  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).  Essentially, "an IFP action is frivolous, and thus not brought in good faith, if it is 'without arguable merit either in law or fact.'" *Ghee v. Retailers Nat'l Bank*, 271 Fed. App'x. 858,

2

859-60 (11th Cir. 2008) (*per curiam*) (quoting *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001)); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In this context, "arguable" means capable of being convincingly argued. *Moreland v. Wharton*, 899 F.2d 1168, 1170 (11th Cir. 1990). Accordingly, "a district court may conclude a case has little or no chance of success and dismiss the complaint before service of process when it determines from the face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably meritless." *Carroll*, 984 F.2d at 393 (internal quotations and citations omitted).

### 2. *Section 1983 and procedural due process*

In a § 1983 action, a plaintiff must demonstrate a deprivation of a constitutionally-protected liberty or property interest, state action, and constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). The application of procedural due process rules protects persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Admittedly, due process applies to and protects against deprivations of a driver's license by the State; accordingly, one's driver's license cannot be taken away without appropriate procedural due process safeguards. *Dixon v. Love*, 431 U.S. 105, 112 (1977); *see also Bell v. Burson*, 402 U.S. 535, 539 (1971). In that regard, due process entitles an individual to notice and some form of hearing before state action may *finally* deprive him of a property interest. *Cryder*, 24 F.3d at 177.

### B. *Discussion*

#### 1. *the complaint*

In his complaint, Plaintiff alleges the Department and Lambert impermissibly revoked his CDL Class "A" commercial driver license without cause thereby violating his due process rights.

According to Plaintiff, at the time he moved to Florida and obtained a commercial driver license in December 2005, Defendants knew of prior convictions against Plaintiff in the states of Tennessee and Georgia yet still issued him a commercial driver license.   Plaintiff argues the Defendants' subsequent suspension and revocation of his license in June 2007 based on these prior offenses violated his right to due process.   Specifically, Plaintiff contends "Ms. Lambert's fabrication of the cause for the revocation, violating the Plaintiff's right to due process (double jeopardy) for revoking his license for a second time for the same offenses, his freedom of choice, to work as a truck driver and live in the state of Fl. and the process is unfair."

His attachments to the complaint indicate otherwise and show his allegations have no arguable merit in either law or fact.   The copy of the uncertified transcript of Plaintiff's driving record lists two convictions in the state of Florida in 1977 for Plaintiff for driving or in physical control of a vehicle while intoxicated (doc. 1, Exh. 3).   In 1983, Plaintiff's Florida driver license was revoked for 90 days for the first offense and six months for the second offense.   The driving record also shows two convictions for driving under the influence in Tennessee, one in 1998 and one in 1999, as well as a conviction for driving while impaired by alcohol in Tennessee in 1999. Additionally, Plaintiff was convicted for driving under the influence in Georgia in 2003.   Following that, the driving record indicates Tennessee permanently revoked Plaintiff's license based on him having 4 or more DUIs.   The State of Texas also indefinitely suspended Plaintiff's license in 2007 after he was found speeding in excess of a posted maximum while in a commercial vehicle in Texas in 2006.

Notwithstanding Plaintiff's repeated infractions and subsequent convictions, the copy of Plaintiff's driver license application indicates that in conjunction with his application for a

commercial driver license Plaintiff stated he had never had his driving privilege revoked, suspended or denied in any state; had never been convicted of an alcohol or drug related offense in his lifetime; had never been convicted of a DUI/DWI four or more times in his lifetime; had never been convicted of a DUI/DWI three times within 10 years; and had never been convicted of a DUI/DWI two times within 5 years (*id.*, Exh. 2).   The application also indicates his "DL record" had been cleared in Georgia and Tennessee but does not indicate what a DL record is or if the notation was based on Plaintiff's own assertions.   After considering his application, the Department issued Plaintiff a Class A commercial driver license on December 16, 2005.[2]

An e-mail  addressed to Plaintiff and sent from an employee of the Department, but signed by Lambert, indicates that, as of the time of issuance of his Class A driver license in December 2005, his driving record was in good standing (*id.*, Exh. 8).[3]   On June 21, 2007, however, the Department received notice of four convictions for driving under the influence from Tennessee and Georgia. Given Plaintiff's two prior Florida convictions for driving under the influence, Plaintiff had a total of six convictions therefore requiring the Department to permanently revoke his driver license under

---

[2]   Interestingly, in Florida, the Department "is authorized to cancel any driver's license, upon determining that the licensee was not entitled to the issuance thereof, or that the licensee failed to give the required or correct information in his or her application or committed any fraud in making such application ...."   Fla. Stat. § 322.22(1).   In light of Plaintiff's responses on his application for his commercial driver license, the Department had the authority under section 322.22(1), Florida Statutes, to cancel his license on the basis of the incorrect information provided and possible fraud committed by Plaintiff in procuring the license.

[3]   The letter from Tennessee's Department of Safety shows as of January 2009, nearly four years after Plaintiff's receipt of a Florida driver license, Plaintiff had "cleared the requirements for the DUI charges of 09-26-98 and 10-11-98 ... Your driving status in Tennessee is listed as 'Has License in Another State'" (*id.*, Exh. 4).   The fact that he "cleared the requirements" as of 2009 does not negate the fact that Plaintiff was convicted of those DUIs prior to issuance of his license in December 2005.

applicable Florida law.  The State of Florida issued notice to Plaintiff on February 11, 2008, in the

form of corrected orders informing Plaintiff of the permanent revocation of his Class A driver license

as a result of his conviction in Tennessee of his fourth DUI, effective January 15, 1999, and then for

Plaintiff's conviction in Tennessee of his fifth DUI, effective May 25, 1999 (*id.*, Exh. 10).  The

orders identified the applicable Florida Statutes providing the authority to revoke Plaintiff's license,

namely, sections 322.24 and 322.28, Florida Statutes.

### 2. Florida's enforcement scheme

The Department is charged with the administration and enforcement of Florida's statutory

scheme relating to drivers' licenses.  Its director is charged with the duty of serving as the executive

officer of the Division of Driver Licenses insofar as the administration of those provisions is

concerned.  Fla. Stat. § 322.02(2)-(3).  Lambert currently operates as the Director of the Division of

Driver Licenses.  As such, she remains subject to the supervision and direction of the Department,

and "her official actions and decisions as executive officer are conclusive unless the same are

superseded or reversed by the department or by a court of competent jurisdiction."  *Id.* at §

322.02(3).

Section 322.27(1)(a), Florida Statutes, authorizes the Department to suspend the license of

any person *without preliminary hearing* upon a showing of its records or other sufficient evidence

that the person has committed an offense for which mandatory revocation of the license is required

upon conviction.  Section 322.28(2)(a), Florida Statutes, mandates a driver's license or driving

privilege be revoked for not less than 180 days or more than 1 year for a first conviction of violating

section 316.193, Florida Statutes, which applies to driving under the influence; for not less than five

years for a second conviction of driving under the influence occurring within 5 years after the date

6

of the prior conviction of violating section 316.193, Florida Statutes; and for not less than 10 years for a third conviction for driving under the influence occurring within 10 years of a prior conviction of violating section 316.193, Florida Statutes.   More importantly, section 322.28(2)(e), Florida Statutes, mandates the Department permanently revoke the driver's license or driving privilege of a person who has been convicted four times of violating section 316.193, Florida Statutes, *i.e.*, of driving under the influence, if a court has not permanently revoked such driver's license or driving privilege within 30 days after imposing a sentence.   Furthermore, under section 322.24, Florida Statutes, the Department "is authorized to suspend or revoke the license of any resident of the state, upon receiving notice of the conviction of such person in another state or foreign country of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of his or her license."   The Department has the authority to suspend or revoke a driver's license *without a preliminary hearing* upon a showing of its records or other sufficient evidence where that person has committed an offense in another state which, if committed in this state, would be grounds for suspension or revocation.  *Id.* at 322.27(1)(e).

As Plaintiff's driving record indicates, in addition to the two convictions for driving under the influence in Florida, he was also convicted of driving under the influence twice in Tennessee and once in Georgia, each of which violated section 316.193, Florida Statutes, as well as one conviction of driving while impaired by alcohol in Tennessee.  Pursuant to sections 322.24 and 322.28, Florida Statutes, the Department was required to permanently revoke Plaintiff's license.  Although Plaintiff had obtained a Florida driver license in 2005, the Department did not receive notice of the other convictions until June 2007.  At that time, the Department permanently revoked Plaintiff's license and provided him proper notice.

Plaintiff contends the Department sent the orders of revocation to the wrong address and he never received notice. The Plaintiff's attachments, however, show the Department complied with the legislative scheme. Section 322.251, Florida Statutes, provides, in relevant part:

> (1) All orders of cancellation, suspension, revocation, or disqualification issued under the provisions of this chapter ... shall be given either by personal delivery thereof to the licensee whose license is being canceled, suspended, revoked, or disqualified or by deposit in the United States mail in an envelope, first class, postage prepaid, addressed to the licensee at his or her last known mailing address furnished to the department. Such mailing by the department constitutes notification, and any failure by the person to receive the mailed order will not affect or stay the effective date or term of the cancellation, suspension, revocation, or disqualification of the licensee's driving privilege.
>
> (2) The giving of notice and an order of cancellation, suspension, revocation, or disqualification by mail is complete upon expiration of 20 days after deposit in the United States mail. Proof of the giving of notice and an order of cancellation, suspension, revocation, or disqualification in either such manner shall be made by entry in the records of the department that such notice was given. Such entry shall be admissible in the courts of this state and shall constitute sufficient proof that such notice was given.

Fla. Stat. § 322.251(1)-(2). Plaintiff's driving record indicates notice was given in accordance with the applicable statute on February 11, 2008 (doc. 1, Exh. 3). The corrected orders of license revocation also reflect a date of February 11, 2008 (*id.*, Exh. 10). Accordingly, the Department provided appropriate notice to Plaintiff regarding the revocation of his license.

Notably, the corrected orders also provided Plaintiff with notice as to the proper procedure for seeking an administrative hearing to review his record and to present arguments to a hearing officer as to why the permanent revocation was unjustified (*id.*). Specifically, the corrected orders state:

> HOW TO APPLY FOR ADMINISTRATIVE HEARING TO REVIEW YOUR RECORD: If you believe that you have any legal basis to show cause why this action is unjustified, you may request a RECORD REVIEW at which time any argument,

other than the validity of a conviction, may be presented to a hearing officer for review.  A request for a record review shall not toll the time in which to file a writ of certiorari in accordance with S. 322.31 F.S.

If you believe there is an error in a court entry on your driving record as listed above, you must contact the court involved as the court must send written certification to our Department for a Review under S. 120.57(2) F.S. before any court entry or action may be changed.  If you have questions about this action, contact the driver license examining office in your area.

This order has been filed in the official records of the Division of Driver Licenses on the day and year written above.  Appeals of this order may be initiated within 30 days of the date of this order by following the procedure specified in S. 322.31 F.S. HSMV F72100 PRSC MULTI REV 10/2007

(*Id.*) (emphasis in original).  Neither the complaint nor the exhibits attached to the complaint indicate Plaintiff in fact availed himself of those remedies.

    3.  *Dixon v. Love*

In a substantially similar context, the Supreme Court upheld a state statute as providing constitutionally adequate procedures for suspending or revoking the license of a driver who had been repeatedly convicted of traffic offenses where the statute and regulations provided for an initial summary decision based on official records with a full administrative hearing available only after the suspension or revocation took effect.  *Dixon*, *supra*, 431 U.S. 105.  Though acknowledging the Due Process Clause applied to the deprivation of a license by the State, the Supreme Court noted that procedural due process in the administrative setting does not always require application of the judicial model.  *Id.* at 112, 115.  Instead, as in the instant case, the ends of due process may be best served and fairness assured by utilizing objective rules which provide drivers with more precise notice of sanctionable conduct and promote equality of treatment among similarly situated drivers as opposed to the uncertainty and inefficiency involved in a case-by-case decision-making process

requiring a pre-determination hearing in every instance.  *See id.* at 115.

The procedural process at issue in this case follows the same general process provided under the Illinois statute at issue in *Dixon*.  As in *Dixon*, the Department makes a revocation determination based on the driver's record and provides the driver an opportunity for a hearing after the fact.  In finding the statute in *Dixon* did not violate licensees' due process rights, the Supreme Court considered the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and the government's interests, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id.* at 112-13 (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  After considering each factor in turn, the Supreme Court upheld the statute as not violating the dictates of due process.  *Id.* 113-15.  For those same reasons, Plaintiff's claims in this instance fail.

Furthermore, the Eleventh Circuit recently addressed a plaintiff's § 1983 action for alleged procedural due process violations in conjunction with the suspension of a driver license in Florida.  *Burlison v. Rogers*, 311 Fed. App'x 207 (11th Cir. 2008).  After consideration, the Eleventh Circuit found no deprivation of procedural due process in the suspension of the plaintiff's driver license where the plaintiff was clearly and unambiguously provided with notice of the suspension, received twenty days to meet the requirements of the order and avoid suspension, and informed he could request an administrative hearing to challenge the suspension.  *Id.* at 209.  Accordingly, the Eleventh Circuit upheld the district court's denial of the plaintiff's motion to proceed *in forma pauperis* and *sua sponte* dismissal of his § 1983 action.  *Id.* at 207-09.

As in *Dixon* and *Burlison*, Plaintiff received notice of the revocation of his driver license and

10

an opportunity for a hearing to challenge the revocation.  At the time of the notice, the revocation decision had not become a final decision and Plaintiff could have availed himself of the remedies available to him for contesting the revocation decision.  Plaintiff, therefore, was afforded the procedural due process to which he was owed.

*C.  Conclusion*

Given the legal and factual landscape in the instant case, Plaintiff's claims have no arguable merit in law or fact.  Accordingly, it is hereby

RECOMMENDED:

1.  The motion to proceed *in forma pauperis* (doc. 2) be denied.

2.  Plaintiff's complaint be dismissed and the case closed.

IT IS SO REPORTED in Tampa, Florida on October 1, 2010.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc:     The Honorable Elizabeth A. Kovachevich
        Plaintiff, *pro se*

11